IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**HARVEY R. JOHNSON,**

      **Plaintiff,**

v.                                                            **CIVIL ACTION NO.: 3:22-CV-56**
                                                                                **(GROH)**

**UNITED STATES OF AMERICA,**

      **Defendant.**

**REPORT AND RECOMMENDATION**

**I. INTRODUCTION**

On March 28, 2022, the *pro se* Plaintiff, who was previously[1] a federal prisoner incarcerated at FCI Gilmer, in Glenville, West Virginia, initiated this case by filing a complaint with the Clerk. ECF No. 1.[2] Plaintiff claims he is entitled to damages pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, for acts which allegedly occurred while Plaintiff was incarcerated at FCI Gilmer in the Northern District of West Virginia. Id. Plaintiff was granted permission to proceed without prepayment of fees on July 5, 2022. ECF No. 10.

The matter is now before the undersigned for a Report and Recommendation to

---

[1] According to the docket and the Bureau of Prisons inmate locator, Plaintiff, inmate number 24945-018, was released from custody on February 25, 2022. https://www.bop.gov/inmateloc/.

[2] All CM/ECF numbers cited herein are from the instant case, 3:22-CV-56, unless otherwise noted.

the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2.  For the reasons set forth below, the undersigned recommends that the complaint be denied and dismissed without prejudice.

## II.   FACTUAL AND PROCEDURAL HISTORY

### A.   Claims in the Complaint

The complaint alleges that on or about January 2020, COVID-19 began to spread throughout FCI Gilmer were Plaintiff was housed.  ECF No. 1-1 at 1.  Plaintiff alleges that although "defendants" were aware of the spreading virus, that "defendants neglected to act on the matter", which resulted in Plaintiff contracting COVID-19.  Id.  As a result, Plaintiff contends that his symptoms included severe pain, trouble breathing, fever, severe cough, aches and pains, loss of smell and taste, and fear of death.  Id.  According to Plaintiff, he attempted to be treated at sick call on January 16, and January 17, 2020, but was turned away and told "there was nothing that could be done."  Id. at 2.  Plaintiff does not allege any persistent injury after recovery from COVID-19.  Plaintiff seeks $5,000,000.00 in compensatory damages, including claims for "future pain and suffering, mental anguish etc."  Id.  at 9.

### B.   Motion to Dismiss for Lack of Jurisdiction

Defendant filed a motion to dismiss for lack of jurisdiction, accompanied by exhibits in support thereof, on September 9, 2022.  ECF Nos. 18, 18-1.[3]  Defendant argues that Plaintiff's complaint should be dismissed because the discretionary function exception to the FTCA, codified at 28 U.S.C. 2680(a), shields Defendant from liability.  ECF No. 18 at

---

[3] Additional institutional and medical records were filed separately under seal on September 13, 2022.  ECF Nos. 21, 22.

2

4. Defendant cites to the two-part test articulated in <u>Rich v. United States</u>, 811 F.3d 140, 144 (4th Cir. 2015) (internal citations omitted) to support its argument. <u>Rich</u> held that:

> To determine whether conduct qualifies for the discretionary function exception, courts apply a two-pronged test. First, a court considers whether the challenged governmental conduct involves an element of judgment or choice. When a statute, regulation, or policy prescribes a specific course of action, there is no discretion and the exception does not apply. Second, if the challenged conduct does involve an element of judgment, the court must then determine whether the judgment was one that the exception was designed to protect, namely, a judgment based on considerations of public policy.

ECF No. 18 at 5. Defendant contends that no federal statute, regulation, or protocol specifically described a course of action for Bureau of Prisons employees to follow in relation to COVID-19 protocols. Accordingly, because there was no specific directive, the conduct of employees involved the exercise of judgment, or choice, and thus the first prong of <u>Rich</u> is met. Defendant further argues that under Supreme Court precedent, the BOP's response to COVID-19 was a "multi-factored decision that required significant policy analysis," and " '[p]rison administrators … should be accorded wide-ranging deference in the adoption of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.' " ECF No. 18 at 7, quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 321-22 (1986). Defendant maintains that the "BOP's decision regarding how to administer its prisons during the COVID-19 pandemic is one inherently grounded in decisions of public policy." ECF No. 18 at 8. Accordingly, Defendant argues that the second prong of <u>Rich</u> is met, meaning that the discretionary function exception applies to Plaintiff's claim precluding subject matter jurisdiction, and Plaintiff's complaint should be dismissed. ECF No. 18 at 8 – 9.

Further, Defendant argues that the Government's sovereign immunity protects it from Plaintiff's claims, specifically based on 28 U.S.C. § 2680. ECF No. 18 at 9. Finally, Defendant argues that Plaintiff's claims of medical negligence are without merit because there "are no facts or evidence supporting Plaintiff's claim that he was turned away from sick call or that he contracted COVID-19 or reported any symptoms or complications relative to COVID-19." Id. at 10. Attached to Defendant's motion to dismiss are copies of Plaintiff's medical records to support that contention. ECF No. 18-1. Moreover, Defendant argues that there is no evidence that any employee of the United States breached a duty of care to Plaintiff, or that such a breach proximately caused Plaintiff any injury. ECF No. 18 at 10.

### C.     Plaintiff's Response to Motion to Dismiss

Plaintiff was granted three separate extensions of time to file his response to the motion to dismiss: (1) on September 30, 2022, Plaintiff was granted a thirty-day extension of time [ECF No. 24]; (2) on November 23, 2022, Plaintiff was granted a second thirty-day extension of time [ECF No. 27]; and (3) on December 12, 2022, Plaintiff was granted a ten-day extension of time [ECF No. 30]. On December 27, 2022, Plaintiff filed a Response to Defendant's motion to dismiss, along with an exhibit. ECF Nos. 32, 32-1.

Therein, Plaintiff argues that his claims do not involve any discretionary function by BOP employees. ECF No. 32 at 1. According to Plaintiff, the BOP had a pandemic response plan in place starting in 2012, but that the plan was not implemented until at least March 2020, two months after "the virus[ ] began to spread throughout the institution" in January 2020, and four months after "the United States was put on notice by China . . . that a human outbreak overseas had begun" in November 2019. Id. at 2 – 3.

Plaintiff argues that he "does not contend there was a cure [for COVID-19] nor if the action was taken it would or could have completely avoided the spread. The fact is there was gross negligence by no effort being made. Which there was no discretion, only requirement, as shown, to do so." Id. at 4. Plaintiff concludes that his complaint should be permitted to proceed, and that the discretionary function exception does not defeat subject matter jurisdiction in this case. Id. at 4 – 5.

### III. LEGAL STANDARD

#### A. Review of Complaints

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and the Court's Local Rules of Prisoner Litigation Procedure, this Court is authorized to review such complaint and submit findings and recommendations to the District Court. This Court is charged with screening Plaintiff's case to determine "any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss, . . . to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action."

#### B. Pro Se Litigants.

Courts must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, a complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute). The Supreme Court in Neitzke recognized that:

> Section 1915(d)[4] is designed largely to discourage the

---

[4] The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint,

> filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Examples of the former class are claims against which it is clear that the defendants are immune from suit. . .

490 U.S. at 327.

### C. Actions Under the Federal Tort Claims Act (FTCA)

The FTCA is a comprehensive legislative scheme by which the United States has waived its sovereign immunity to allow civil suits for actions arising out of the negligent acts of agents of the United States. The United States cannot be sued in a tort action unless Congress has waived the government's sovereign immunity and authorized suit under the FTCA. <u>Dalehite v. United States</u>, 346 U.S. 15, 30-31 (1953). The provisions of the FTCA are found in Title 28 of the United States Code. 28 U.S.C. §§ 1346(b), 1402(b), 2401(b) and 2671-2680.

In 2021, the Supreme Court issued a decision which summarized the historical precedent which led to the enactment of the FTCA:

> The FTCA streamlined litigation for parties injured by federal employees acting within the scope of their employment. Before 1946, a plaintiff could sue a federal employee directly for damages, but sovereign immunity barred suits against the United States, even if a similarly situated private employer would be liable under principles of vicarious liability. Despite that immunity, the Government often would provide counsel to defendant employees or indemnify them. In addition, Congress passed private bills that awarded compensation to

---

if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

> persons injured by Government employees. But by the 1940s, Congress was considering hundreds of such private bills each year. Critics worried about the speed and fairness with which Congress disposed of these claims.
>
> In 1946, Congress passed the FTCA, which waived the sovereign immunity of the United States for certain torts committed by federal employees acting within the scope of their employment. The Act in effect ended the private bill system by transferring most tort claims to the federal courts. Plaintiffs were (and are) required to bring claims under the FTCA in federal district court. Federal courts have jurisdiction over these claims if they are actionable under § 1346(b). A claim is actionable if it alleges the six elements of § 1346(b), which are that the claim be:
>
> [1] against the United States, [2] for money damages, ... [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.[5]

Brownback v. King, 141 S. Ct. 740, 746 (2021) (cleaned up and internal citations omitted).

An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150 (1963). The FTCA provides at § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

---

[5] 28 U.S.C. § 1346(b)(1) provides, "[T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

However, the FTCA does not create a new cause of action. Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). "The statute merely "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Id.

Even where the government has waived sovereign immunity, the FTCA only authorizes lawsuits against the United States itself. 28 U.S.C. § 1346(b). Therefore, the United States, not any government employee or agency, is the only proper defendant in an FTCA lawsuit. See 28U.S.C. 2679(a); Webb v. Hamidullah, 281 F. App'x 159, 161 n. 4 (4th Cir. 2008) (per curiam) (unpublished) (United States is the only proper defendant in FTCA claim); Holmes v. Eddy, 341 F.2d 477, 480 (4th Cir. 1965) (per curiam) (federal agency cannot be sued pursuant to the FTCA); Allfgeir v. U.S., 909 F.2d 869 (6th Cir. 1990) ("The FTCA clearly provides that the United States is the only proper defendant in a suit alleging negligence by a federal employee").

A constitutional civil rights claim is not cognizable in an FTCA lawsuit. FDIC v. Myer, 510 U.S. 471, 477-79 (noting that a constitutional tort claim is not cognizable in an FTCA lawsuit because the United States has not waived its sovereign immunity with respect to constitutional tort allegations); Blanchard v. United States, No. 2:14cv58, 2015 WL 4107311, at 13 (N.D.W. Va. July 7, 2015), aff'd 622 F. App'x 287 (4th Cir. 2015) (per curiam) (unpublished) (finding that a civil rights claim alleging a violation of the Eighth Amendment prohibition against cruel and unusual punishment is not actionable against the United States in an FTCA lawsuit because a constitutional tort claim is not cognizable under the FTCA.

A number of statutory exceptions apply to the Federal Tort Claims Act, including

an exception for any discretionary function, or for any damages related to establishment of a quarantine:

> The provisions of this chapter and section 1346(b) of this title shall not apply to--
> (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.
>
> . . . .
>
> (f) Any claim for damages caused by the imposition or establishment of a quarantine by the United States.

28 U.S.C.A. § 2680.

### D. Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff's complaint was filed *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S.

9

519, 520 - 1 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the

10

applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

## IV.  ANALYSIS

As recognized by the Supreme Court in Brownback v. King, 141 S. Ct. at 746, an FTCA claim is actionable if it alleges the six elements of 28 U.S.C. § 1346(b), which are that the claim be: (1) against the United States; (2) for money damages; (3) for injury or loss of property, or personal injury or death; (4) caused by the negligent or wrongful act or omission of any employee of the Government; (5) while acting within the scope of his office or employment; (6) under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Plaintiff asserts that he was injured when he was negligently exposed by BOP employees to COVID-19 from other inmates, and then contracted COVID-19, while incarcerated at FCI Gilmer. ECF No. 1. Defendant's motion to dismiss argues that the discretionary function exception to the FTCA excludes the United States from liability for such a claim. ECF No. 18. Defendant also asserts that the quarantine exception to the FTCA excludes the United States from liability, because the United States has not waived its sovereign immunity in relation to quarantine situations. ECF No. 18 at 9.

The Fourth Circuit has previously recognized that when the Government argues

11

that the discretionary function exception applies, it is essentially an assertion that the court lacks subject matter jurisdiction. Tyree v. United States, 814 F. App'x 762, 766 (4th Cir. 2020). The undersigned agrees with Defendant's argument that the discretionary function exception applies here, rendering Plaintiff's claim unactionable.

The discretionary function exception is codified in subsection (a) of the exceptions statute:

> The provisions of this chapter and section 1346(b) of this title shall not apply to—(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680.

In Blanco Ayala v. United States, 982 F.3d 209, 214–15 (4th Cir. 2020), the Fourth Circuit summarized the analysis which must be performed to determine whether the discretionary function exception bars an FTCA claim:

> To determine whether the exception applies, we must first ascertain whether the acts in question "are discretionary in nature," such that they "involv[e] an element of judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)). The exception does "not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz*, 486 U.S. at 536, 108 S.Ct. 1954.
>
> Second, we must determine whether the challenged "governmental actions and decisions" were "based on considerations of public policy." *Id.* at 537, 108 S.Ct. 1954. When statutes, regulations, or agency guidelines grant discretion to a government agent, "it must be presumed that

12

> the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324, 111 S.Ct. 1267. In conducting this analysis, we do not "inquire whether policy considerations *were actually* contemplated in making a decision." *Smith v. Wash. Metro. Area Transit Auth.*, 290 F.3d 201, 208 (4th Cir. 2002). Rather, we consider only whether "the nature of the challenged decision in an objective, or general sense, ... is one which we would expect inherently to be grounded in considerations of policy." *Baum*, 986 F.2d at 721.

As to the first prong articulated in Blanco Ayala, the Supreme Court has stated that "conduct cannot be discretionary unless it involves an element of judgment or choice." Berkovitz by Berkovitz v. United States, 486 U.S. 531, 536 (1988). Further, "if the employee's conduct cannot appropriately be the product of judgment or choice then there is no discretion in the conduct for the discretionary function exception to protect." Id. "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" United States v. Gaubert, 499 U.S. 315, 322 (1991) (*quoting* Berkovitz).

Thus, to meet the first prong of the Blanco Ayala analysis, the Plaintiff must establish that the Government's agents, whom he accuses of gross negligence, were not performing a discretionary function at the time he alleges he was injured, and instead were performing a mandatory course of action pursuant to statute, regulation, or policy. However, it is clear that Plaintiff is unable to demonstrate either fact.

BOP employees appear to have engaged in a discretionary function in determining whether and when to implement a quarantine. The BOP is charged with the discretionary duty of care to maintain order within its facilities pursuant to 18 U.S.C. § 4042. That statute provides in pertinent part, that, "[t]he Bureau of Prisons under the direction of the

13

Attorney General, shall . . . provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." However, as the Fourth Circuit has held, "decisions relating to the accommodation of inmates, such as cell assignments, are the type of day-to-day judgments that rest firmly in the discretion of prison officials." Veney v. Wyche, 293 F.3d 726, 733 (4th Cir. 2002). Accordingly, decisions made by BOP officials related to the accommodation of inmates rest firmly within the discretionary function of those officials.

Moreover, the Government is immune from suit for any claim related to a quarantine. "The provisions of this chapter and section 1346(b) of this title shall not apply to--(f) Any claim for damages caused by the imposition or establishment of a quarantine by the United States." 28 U.S.C.A. § 2680.

To the extent that Plaintiff argues that BOP employees were mandated to take specific action based on any BOP pandemic response plan, he fails to cite to authority which supports that claim. Plaintiff does not allege that any specific rule or mandate contained in any pandemic response plan was violated by the BOP. Rather, Plaintiff asserts broadly, without citing to any authority, that BOP employees do not have authority to exercise discretion, and that their actions are mandatory.[6] ECF No. 32 at 4. Without any authority to dictate the actions of the BOP or its employees, it is clear that BOP employees actions' are discretionary.

Further, the BOP, like the rest of the country, indeed the world, imposed a quarantine on or around March 2020, to address the global COVID-19 pandemic. The

---

[6] In his response, Plaintiff mentions a pandemic response plan from 2012, but no authority to suggest that any 2012 plan was applicable in 2019 or 2020, or would control the BOP's actions as related to the COVID-19 pandemic. ECF No. 32.

14

imposition of a quarantine is expressly listed in 28 U.S.C. § 2680(f) as an area where the Government maintains its sovereign immunity. Accordingly, even if Plaintiff were able to demonstrate that he meets the six elements for an FTCA claim under the Brownback test, his claim is still subject to dismissal, because the Government maintains sovereign immunity.

As to the second prong of the Blanco Ayala test, Plaintiff is also incapable of demonstrating that he is entitled to relief. The FTCA's discretionary function exception only applies to discretionary conduct that is based on social, economic, or political goals. Where an established government policy—such as the BOP policies related to the provision of suitable quarters for inmates, and for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States—allows a government agent to exercise discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Gaubert, 499 US at 324. Therefore, a complaint cannot survive a motion to dismiss unless it alleges facts that would support a finding that "the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." Id. at 324 – 25. Congress in enacting 18 U.S.C. § 4042, granted to BOP employees discretion with respect to how to best ensure the safekeeping, care, and subsistence for all inmates in their suitable quarters. Such responsibility is based on the considerations of public policy related to inmate safety and welfare. Accordingly, the decision of BOP staff related to accommodation of inmates, falls within the discretionary function exception to the FTCA. To the extent that the Plaintiff alleges that BOP employees' actions were negligent or grossly negligent as relates to the accommodation of inmates at FCI Gilmer, in response to the COVID-19

pandemic, the discretionary function applies, and the United States is immune from liability for the Plaintiff's complaint.

Because Defendant is immune from suit under the Federal Tort Claims Act when the act or omission complained of is covered by the discretionary function exception, Plaintiff's complaint fails. Even if Plaintiff demonstrated that he meets all six prongs to assert a cause of action under the FTCA and Brownback, his claim still fails. Regardless of whether the alleged injuries he suffered from contracting COVID-19 in or around January 16, 2020, and January 17, 2020, were caused by the negligent or wrongful act or omission of any employee of the Government, the discretionary function exception still applies, and Plaintiff's claims are not actionable under the FTCA. Moreover, Defendant provided medical records which demonstrate that Plaintiff tested negative for COVID-19 and never complained of or documented any symptoms related to COVID-19. ECF No. 18-1. Plaintiff received medical care on the following twenty-seven dates from December 2019 through March 2021, and never once complained of symptoms consistent with COVID-19, and was never documented to have contracted COVID-19: (1) December 6, 2019; (2) February 18, 2020; (3) February 25, 2020; (4) March 10, 2020; (5) March 13, 2020; (6) March 16, 2020; (7) March 17, 2020; (8) May 15, 2020; (9) June 2, 2020; (10) June 11, 2020; (11) June 23, 2020; (12) July 27, 2020; (13) October 28, 2020; (14) December 9, 2020; (15) December 10, 2020; (16) December 14, 2020; (17) January 5, 2021; (18) January 6, 2021; (19) January 14, 2021; (20) January 20, 2021; (21) January 21, 2021; (22) February 16, 2021; (23) February 17, 2021; (24) February 26, 2021; (25) March 4, 2021; (26) March 10, 2021; and (27) March 15, 2021. Rather, Plaintiff's medical records show that on the one time he was tested for COVID-19, on March 15, 2021, the

results were negative. Accordingly, despite Plaintiff's claims of suffering physical injury from the contraction of COVID-19, it appears that he never contracted the virus, and the records demonstrate that he never complained of any physical injuries related to COVID-19 while incarcerated.

The Prison Litigation Reform Act (PLRA) of 1996, placed an important limitation upon all actions arising from incarceration, requiring proof of physical injury to merit monetary damages. Under 42 U.S.C. § 1997e(e), no recovery of monetary damages is allowed for emotional stress:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

See Munn Bey v. Department of Corrections, 839 F.Supp.2d 1 (D.D.C. 2011).

For all of these reasons, the undersigned finds that the District Court lacks subject matter jurisdiction to consider this matter. When subject-matter jurisdiction does not exist, "the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 118 S.Ct. 1003, 1012–16 (1998); Reinbold v. Evers, 187 F.3d 348, 359 n.10 (4th Cir. 1999).

## V. RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's complaint as to the United States of America be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

It is further **RECOMMENDED** that Defendant's motion to dismiss [ECF No. 18] be **GRANTED**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: February 17, 2023

/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE